UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHANE STEVENS and RELIANT IMMUNE DIAGNOSTICS, INC., | § § § | No. 1:22–CV–504–DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| ANHUI DEEPBLUE MEDICAL TECHNOLOGY CO., LTD., | § § § | |
| Defendant. | | |

_____

ORDER ADOPTING REPORT AND RECOMMENDATION

Before the Court is a Report and Recommendation ("R&R") filed by Magistrate Judge Dustin Howell ("Judge Howell" or the "Magistrate Judge") on May 4, 2023. (Dkt. # 16.)

On May 24, 2022, Plaintiffs Shane Stevens and Reliant Immune Diagnostics, Inc. (collectively, "Plaintiffs") filed this case against Anhui Deep Blue Medical Technology Co., Ltd. ("Deep Blue" or "Defendant"). (Dkt. # 1.) On January 20, 2023, Defendant filed a Motion to Dismiss. (Dkt. # 7.) Judge Lee Yeakel referred the Motion to Dismiss to Judge Howell on February 15, 2023. (Dkt. # 14.) Judge Yeakel transferred this case to the undersigned on April 27,

2023.  (Dkt. # 15.)  Judge Howell issued the instant R&R on May 4, 2023.  (Dkt. # 16.)

The Court finds its review of the R&R suitable for disposition without a hearing.  After careful consideration, and for the reasons given below, the Court **ADOPTS** the Magistrate Judge's R&R in full.  (Dkt. # 16.)  The case is **DISMISSED WITHOUT PREJUDICE** and the Clerk is **INSTRUCTED** to **CLOSE THE CASE**.

## LEGAL FRAMEWORK

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Any party who desires to object to a magistrate judge's findings and recommendations must serve and file written objections within fourteen days after being served with a copy of the findings and recommendation.  FED. R. CIV. P. 72(b)(2).  Findings to which no specific objections are made are reviewed based on whether they are clearly erroneous or contrary to law.  United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989).

## DISCUSSION

Because neither party has submitted objections, the Court reviews the R&R for clear error.  See id.  This case arises from the sale of 100,000 defective COVID-19 test kits manufactured by Deep Blue.  (Dkt. # 1.)  The 100,000 test kits

made their way to Plaintiffs indirectly. Deep Blue—a Chinese corporation—sold the 100,000 test kits to Weida—a Hong Kong corporation—and delivered the test kits directly to Weida's buyer, Rallo Holdings Limited ("Rallo"), a company based in Chicago. (Dkt. # 11-9 at 1-2.) Rallo then sold the test kits to Plaintiffs, a Delaware company with principal place of business in Austin, Texas.[1] (Dkt. # 1 at 2.) In their Complaint, Plaintiffs alleged (1) breach of contract under the Texas Business and Commerce Code; (2) unfair and deceptive business practices under the Texas Deceptive Trade Practices Act; (3) manufacturing defect; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of implied warranty of merchantability; and (6) fraud. (Id. at 13-19.) Deep Blue argues in its Motion to Dismiss that this Court lacks personal jurisdiction over it as a Chinese corporation that "has no connections to Texas and has not directed any actions toward the State of Texas." (Dkt. # 7 at 8.) The Magistrate Judge agreed with Deep Blue. (Dkt. # 16.)

The Court finds that this conclusion was not in clear error, and affirms. Like the Magistrate Judge, because the Court's finding of no personal

---

[1] Though the Court need not reach the merits of the Complaint, given the lack of personal jurisdiction, the Court briefly notes that Plaintiffs' attempt to invoke third-party beneficiary law is inapt. Courts presume that the parties contracted not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out. Corpus Christi Bank & Trust v. Smith, 525 S.W.2d 501, 503 (Tex. 1975). Plaintiffs fail to show that Deep Blue intended to benefit Plaintiffs, regardless of Rallo's intent to do so.

3

jurisdiction resolves the motion to dismiss, the Court need not address Deep Blue's other proffered grounds for dismissal. See Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 232 (5th Cir. 2012) (affirming district court's decision to "dispose of the personal jurisdiction issue first and [ ] not proceeding further after concluding that it lacked personal jurisdiction").

### I.      General Principles of Personal Jurisdiction

"A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant . . . the forum state's long-arm statute must confer personal jurisdiction [and] the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment." Id. at 220. Because Texas's long-arm statute has been interpreted to extend to the limits of due process, the Court need only determine whether subjecting Deep Blue to suit in Texas in this case would be consistent with the Due Process Clause of the Fourteenth Amendment. See id.

"The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state. Such contacts can give rise to general or specific jurisdiction." Stroman Realty, Inc. v. Antt, 528 F.3d 382, 385 (5th Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). However, the Fourteenth Amendment also "limit[s] the power of a State to assert in personam jurisdiction

over a nonresident defendant." Helicopteros Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413–414 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1878)).

Where a defendant has "'continuous and systematic general business contacts' with the forum state," the forum may exercise general personal jurisdiction over the defendant. Antt, 528 F.3d at 385 (quoting Helicopteros, 466 U.S. at 415 n.9) (finding the Texas district court improperly exercised general jurisdiction over officials from California and Florida who did not have an office in Texas or sufficient contacts with Texas giving rise to general jurisdiction). If a Defendant's contacts "are less pervasive, courts may exercise 'specific jurisdiction' in 'a suit arising out of or related to the defendant's contact with the forum.'" Id. (quoting Helicopteros, 466 U.S. at 415 n.9).

The plaintiff bears the burden of proof to demonstrate personal jurisdiction. Nuovo Pignone, PsA v. Storman Asia M/V, 310 F.3d 374, 378 (5th Cir. 2002); Elly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). Courts in the Fifth Circuit evaluate whether exercise of both general and specific personal jurisdiction is consistent with the Due Process Clause by applying a three-part test, considering:

> (1) [W]hether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Nuovo Pignone, 310 F.3d at 378 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  If a defendant's contacts with the forum state are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment, the court must dismiss the case for lack of personal jurisdiction.  Id.

### II.     No personal jurisdiction exists over Deep Blue

Plaintiffs concede that this Court lacks general jurisdiction, but urge that the facts support specific jurisdiction over Deep Blue.  (Dkt. # 11 at 9.)[2]  The Court agrees with the Magistrate Judge that there is no specific jurisdiction.  While "[f]low of a manufacturer's products into the forum . . . may bolster an affiliation germane to specific jurisdiction," the record lacks evidence demonstrating a flow of Deep Blue's products into Texas.  Goodyear Dunlop, 131 S. Ct. at 2855.

The Magistrate Judge applied the correct legal test to determine the existence of specific jurisdiction; asking: (1) whether Deep Blue purposely directed its activities toward Texas or purposely availed itself of the privileges of conducting activities there; (2) whether Plaintiffs' cause of action arises out of or

---

[2] Plaintiffs forfeited their argument about general jurisdiction by stating only that "Plaintiffs believe general jurisdiction is applicable; however, Plaintiffs recognize that specific jurisdiction may be more applicable," and failing to provide any argument in support of general jurisdiction.  General jurisdiction nonetheless fails even if this argument was not forfeited, as there is no evidence that Deep Blue had contacts with Texas that would "render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).

results from Deep Blue's Texas-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.  See Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (quoting Nuovo Pignone, 310 F.3d at 378). Although Deep Blue's contacts with the forum must be "more than 'random, fortuitous, or attenuated, or . . . the unilateral activity of another party or third person,'" even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts."  ITL International, Inc. v. Constenla, S.A., 669 F.3d 493, 498-99 (5th Cir. 2012) (quotation omitted).

"In cases involving a product sold or manufactured by a foreign defendant," the Fifth Circuit follows a "'stream-of-commerce' approach to personal jurisdiction, under which the minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state."  Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 177 (5th Cir. 2013).  Under this approach, "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, but the defendant's contacts must be more than random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."  Id.

7

Plaintiffs fail to show that Deep Blue delivered the 100,000 COVID-19 tests "into the stream of commerce with the expectation that [they] would be purchased by or used by consumers" in Texas.  Id.  Deep Blue is a Chinese company with its place of incorporation and principal place of business in Anhui Province, China.  (Dkt. # 7-1 at 1.)  Deep Blue has never owned any properties, rented offices, hired employees, or possessed bank accounts in Texas.  (Id.)  Deep Blue contracted with Weida, a Hong Kong company, to sell Weida 100,000 test kits for COVID-19.  (Dkt. # 7-2.)³  Deep Blue agreed to deliver the kits to Weida's buyer, Rallo, a company based in Chicago.  (Dkt. # 11-9 at 1-2.)  Rallo then sold the test kits to Plaintiffs.  (Dkt. # 11 at 5.)

Plaintiffs have not presented facts indicative of a nation-wide distribution scheme through Rallo (or Weida) from which the Court could infer that Deep Blue expected its tests to reach Texas.  See J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 878 (2011) (finding state lacked personal jurisdiction over foreign manufacturer who sold machines to a U.S. distributor given that foreign manufacturer had only sold one machine in the state and had not marketed or shipped machines to the state).  Though Plaintiffs allege that Rallo was an

---

³ Though Plaintiffs' principal complaint is that the tests were not FDA-approved, the Sales and Purchase agreement contains several disclaimers about whether the tests are complaint with the country-of-import, including a notable absence of checkmark next to a box indicating whether the tests were FDA complaint.  (See Dkt. # 7-2 at 8.)

"official representative" of Deep Blue, this allegation is unsupported by the record. (Id.)  Plaintiffs' proffered evidence of this authorization is an email from the CEO of Rallo to the FDA—inquiring into the approval of the test kits—which the FDA did not recognize as a legitimate statement of an agency relationship and/or which Deep Blue never confirmed as authorized.  (See Dkt. # 11-3.)  Plaintiffs alternatively allege that an email between Deep Blue and Rallo demonstrate that they "are the same parties."  (Dkt. # 11-9 at 2.)  As the Magistrate Judge pointed out, however, Plaintiffs take this line so far out of context as to be misleading.[4] (Id.)

        The record also lacks evidence of any other orders for tests, or tests themselves, that ended up in Texas.  See Pervasive Software Inc., 688 F.3d at 227 (holding jurisdiction "did not arise out of or result from the relatively sparse contacts involving Lexware's fifteen internet website sales of its products to twelve Texas billing addresses").  While Plaintiffs point to a shipping document indicating that a Texas logistics company would be handling the 100,000 test shipment after it left Chicago, this is insufficient to show that Deep Blue had knowledge that the final destination of the tests was Texas, especially since the shipment document Plaintiffs rely on had no "To" line and indicated that Rallo was the party

---

[4] The phrase clearly means, within context, that both Deep Blue and Rallo are suffering losses as a result of the FDA- de-listing the tests.  The email's poor English further necessitates reading that particular phrase with ample context.

9

purchasing the test kits.  (Dkt. # 11-8 at 4.)  Even if this attenuated link was enough to alert Deep Blue to the fact that Rallo might be selling the products on to Texas, it is "not enough that the defendant might have predicted that its goods will reach the forum State."  Nicastro, 564 U.S. at 882.  Deep Blue's contacts needed to be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."  Ainsworth, 716 F.3d at 177.  Plaintiffs have not provided evidence that the tests ended up in Texas by anything other than the unilateral action of Rallo, who Plaintiffs have not shown to be an agent or authorized distributor of Deep Blue's products.  See id. (finding foreign company subject to personal jurisdiction in state on basis of sales and distribution agreement with American distributor defining distributor's sales territory as the entire United States and company's awareness that distributor marketed the product throughout the United States).

        Plaintiffs finally point to Deep Blue's appointing a registered agent for FDA purposes in Colorado and registering its products with the FDA.  (Dkt. # 11 at 8-9.)  But mere FDA registration is not enough to implicate specific personal jurisdiction in every U.S. state.  Plaintiffs cite Ayla, a Ninth Circuit case, for the proposition that FDA registration supports the conclusion that Deep Blue sought out the benefits afforded by this country's regulatory regime.  Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 982 (9th Cir. 2021).  But Ayla is

10

distinguishable; the Australian defendant company (1) admitted to contracting with a logistics company in Idaho to fulfill orders outside of Australia; (2) hired American influencers to advertise its products; (3) made Facebook posts specifically referencing sales for customers in the United States; and (4) hosted a website advertising two-to-four day delivery to the United States.  Id.  at 978.  Such evidence is wholly lacking in this case.  The Facebook page screenshots provided by Plaintiffs actually hurt their argument—showing Deep Blue's most recent activity in 2018, far before the alleged conduct in this case, and merely displaying photos of Deep Blue's attendance at an exposition *in China*.  (Dkt. # 11-7 at 3.)  Plaintiffs make a similarly bare allegation about Deep Blue having a website from which customers can purchase tests—seemingly, from anywhere in the world.  (Dkt. # 11 at 6.)  Under Fifth Circuit case law, "personal jurisdiction is based on *actual* internet sales to forum residents, not the mere possibility of sales." CMC Steel Fabricators, Inc. v. Franklin Inv. Corp., 2016 U.S. Dist. LEXIS 80963, 2016 WL 3418974, at *2 (N.D. Tex. June 22, 2016) (emphasis added).  Plaintiffs have provided no evidence of Deep Blue conducting internet sales into Texas (including the sale at issue here), so the mere existence of a website is insufficient to confer personal jurisdiction.

11

CONCLUSION

The Court **ADOPTS** the R&R as the opinion of the Court. (Dkt. # 16.) Deep Blue's Motion to Dismiss is **GRANTED**. (Dkt. # 7.) The case is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **INSTRUCTED** to **CLOSE** the **CASE**.

    **IT IS SO ORDERED**.

    DATED: Austin, Texas, June 13, 2023.

_____
David Alan Ezra
Senior United States District Judge